Argued and submitted January 7, Peremptory writ issued November 4, 1980

## STATE ex rel YOUNG et al,
*Plaintiffs-Relators,*

*v.*

## CROOKHAM,
*Defendant.*

(TC A7704-05707 etc., SC 26305)

618 P2d 1268

Don S. Willner and Charles S. Tauman, Portland, argued the cause for plaintiffs-relators. With them on the briefs were Willner, Bennett, Bobbitt & Hartman and Kafoury & Hagen, Portland.

Wayne A. Williamson, Portland, argued the cause for defendant. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, Wayne A. Williamson, Ridgway K. Foley, Jr., Henry C. Willener and Elizabeth K. Reeve, Portland.

Before Denecke,* Chief Justice, and Howell, Lent, Linde, Peterson, and Tanzer, Justices.

LENT, J.

---

*Denecke, C. J. did not participate in this decision.

**LENT, J.**

The issue in this case is whether Oregon should adopt the so-called "one bite" or "first comer" theory of punitive damages whereby, in multiple litigation arising from a continuing episode, the award of exemplary damages to one plaintiff would preclude the recovery of punitive damages for all subsequent plaintiffs.

Plaintiffs are 75 persons[1] who claim to have been exposed to E coli bacteria resulting in severe gastrointestinal illness while visiting Crater Lake Lodge in Crater Lake National Park. Defendant is the presiding judge of the Multnomah County Circuit Court.

Defendant circuit judge made an order disallowing plaintiffs' claims for punitive damages in all subsequent cases after such damages were awarded in the case of *Joachim v. Crater Lake Lodge,* being Multnomah Clerk's No. 787420. Understanding the unique and controversial nature of his order, defendant encouraged plaintiffs to petition for a writ of mandamus to decide the issue before proceeding to trial in the remaining 75 cases. This court, exercising original jurisdiction, issued an alternative writ to consider what limits, if any, a trial court may impose on potentially cumulative punitive awards evolving from a single, albeit protracted, course of tortious conduct by a single defendant or set of defendants.

*FACTS*

Summer of 1975 saw a high incidence of severe intestinal illness among employees of Crater Lake Lodge and visitors to the lodge. The epidemic was determined by mid-summer to be the product of raw sewage overflowing into the water supply, and on July 11, 1975, the park and lodge were closed for the season by federal authorities.

Alleging injury as a result of drinking the contaminated water, 76 persons, through common counsel, initiated a class action against Crater Lake Lodge, Inc. and Ralph Peyton, the manager thereof. Defendants contested the propriety of a class action, and the circuit court

---

[1] 76 cases were originally filed. One of these has been tried to judgment and affirmed on appeal. *Joachim v. Crater Lake Lodge,* 48 Or App 379, 617 P2d 632 (1980). 75 cases remain awaiting trial.

refused to certify the class. This court held that order was not appealable as a matter of right. *Joachim, et al v. Crater Lake Lodge, Inc., et al,* 276 Or 875, 556 P2d 1334 (1976). Plaintiffs then filed individual actions and moved to consolidate the cases for trial on the issue of liability. Defendants opposed consolidation, and the trial court denied the motion. Following denial of the motion to consolidate, the 76 plaintiffs signed an agreement which provided, among other things, that any punitive damages recovered by members of the group would be prorated and divided among all of them.[2]

In early November, 1978, the first of the 76 cases went to trial before a jury. Both parties stipulated that the record of that case be made part of the record here. During that trial evidence was presented by plaintiff Janice Joachim of the conduct of defendants from mid-June to July 11, 1975. Included was evidence of defendants' knowledge of wide-spread illness among employees, less-than-whole-hearted cooperation with health investigators, rousting of nauseated employees from their sick beds to work in the lodge's restaurant and food handling operations, failure to warn patrons and visitors of potential injury and attempts to cover up the seriousness of the problem including tearing down warning signs posted by the park management and removing newspapers containing accounts of the extent and severity of the illness. The evidence received concerned events both prior and subsequent to the date of Ms. Joachim's injury. The jury returned a plaintiff's verdict for compensatory and punitive damages, which judgment has been affirmed by the Court of Appeals in *Joachim v. Crater Lake Lodge,* 48 Or App 379, 617 P2d 632 (1980), holding that the evidence was sufficient to support a finding of wanton misconduct.

Following resolution of the *Joachim* case at the trial level, defendant herein entered an Order granting the

---

[2] The agreement between the 76 original plaintiffs reads, in relevant part,

"I agree that those expenses which benefit the entire group and punitive damage recovery, if any, in the claims that you are handling for me and others against Crater Lake Lodge and its owners may be prorated by you approximately in accordance with the value of each claim notwithstanding whether such costs or punitive damages are incurred or recovered pursuant to any particular case."

motion of Crater Lake Lodge and Ralph Peyton for summary judgment on the issue of punitive damages. That order would eliminate any possibility of punitive damage recovery in the remaining 75 cases whose plaintiffs are petitioners in the instant case.

## THE ONE BITE/FIRST COMER THEORY

■        Punitive damages are allowed in Oregon to punish a willful, wanton or malicious wrongdoer and to deter that wrongdoer and others similarly situated from like conduct in the future. *Martin v. Cambas,* 134 Or 257, 293 P 601 (1930); *accord Noe v. Kaiser Foundation Hospitals,* 248 Or 420, 435 P2d 306 (1967). This court agrees with the reasoning of *International Brotherhood of Electrical Workers v. Foust,* 442 US 42, 99 S Ct 2121, 60 L Ed2d 698 (1979), that contrary to early English theory, punitive damages under the modern view are not a substitute for compensatory awards nor an offset against litigation expense. *Noe v. Kaiser Foundation Hospitals, supra.*

The propriety of the award of punitive damages in the *Joachim* case is not at issue in this case. The issue before this court is whether, after punitive damages have been awarded in one case, a judge may remove punitive damages from the jury's consideration in all subsequent cases involving the same set of defendants and arising from the same continuing wrongful act.

Considerable concern has surfaced in recent decades over the effect of multiple punitive damages awards on a single defendant faced with mass litigation. *Roginsky v. Richardson-Merrell, Inc.,* 378 F2d 832 (2d Cir 1967); *Globus v. Law Research Services,* 418 F2d 1276 (2d Cir 1969); *deHaas v. Empire Petroleum Co.,* 435 F2d 1223 (10th Cir 1971); *see also,* Kreindler, *Punitive Damages in Aviation Litigation,* 8 Cum L Rev 607 (1978). Chief among the cases voicing concern about the effects of multiple punitive damages awards in mass litigation is *Roginsky v. Richardson-Merrell, Inc., supra.* That case considered the controversy surrounding the drug MER/29 which was distributed by its manufacturer despite studies indicating that the drug could cause cataracts in users.

The MER/29 litigation involved some 1,500 cases across the nation, in many of which punitive damages were

sought. Before deciding the case on other grounds,[3] the *Roginsky* court expressed grave concern at the potential for "overkill" inherent in allowing multiple recoveries of punitive damages for an indefinite class of plaintiffs. Implicit in *Roginsky* and other sources evidencing concern for defendants faced with the potential of such multiple awards is the proposition that the purpose of punitive damages is deterrence, not destruction. See e.g., *Maxey v. Freightliner,* 450 F Supp 955, 961 (N.D.Tex. 1978). With this the court agrees.

The apprehension expressed in the *Roginsky* dictum must, however, be placed in its proper perspective. First, the MER/29 litigation involved an inascertainable number of plaintiffs bringing suit in a multitude of jurisdictions from coast to coast. In the instant case, the statute of limitations has run and the number of plaintiffs is therefore set. All pending cases against Crater Lake Lodge and Mr. Peyton are within a single jurisdiction, thus there is no danger of multifarious legal doctrines adding to the unpredictability of the cases as was true in the MER/29 situation. Second, the reasoning of *Roginsky* does not stand unchallenged. The California Court of Appeal, in an MER/29 case decided shortly after *Roginsky,* noted the decision of the Second Circuit and expressly chose to "respectfully disagree." *Toole v. Richardson-Merrell, Inc.,* 251 CA2d 689, 715, 60 Cal Rptr 398, 416 (1967), allowing recovery of punitive damages in MER/29 cases in California. Third, financial interests of the malicious and wanton wrongdoer must be considered in the context of societal concern for the injured and the future protection of society.

Other aspects of the MER/29 analogy are particularly damning to defendant's position in the instant case. Hindsight demonstrates that the apprehension of the *Roginsky* court was heavily exaggerated. Of the 1,500 cases, in only 3 did juries award punitive damages. The vast majority of cases were settled and the financial destruction feared by the Second Circuit did not come to pass. *See generally, Rheingold, The MER/29 Story—An Instance of Successful Mass Disaster Litigation,* 56 Cal L Rev Part 1, 116 (1968).

---

[3] The case was decided on the finding of the court that the evidence presented at trial was insufficient to meet the standard of proof for punitive damages under New York law. *Roginsky v. Richardson-Merrell, Inc.,* 378 F2d 832 (2d Cir 1961).

"[I]f this is an example of the most crushing punishment that will befall a manufacturer guilty of flagrant marketing misbehavior—and it is difficult to imagine a more extreme case of such misbehavior than that of Richardson-Merrell in marketing MER/29—then the threat of bankrupting a manufacturer with punitive damages awards in mass disaster litigation appears to be more theoretical than real." Owen, *Punitive Damages in Products Liability Litigation,* 74 Mich L Rev Part 2 1258, 1324-1325 (1976).

Finally, *Roginsky,* despite the court's concern for defendants' plight in a mass litigation context, specifically rejects the one bite/first comer proposal as a solution.

"We know of no principle whereby the first punitive award exhausts all claims for punitive damages and would thus preclude future judgments * * * neither does it seem fair or practicable to limit punitive recoveries to an indeterminate number of first comers." *Roginsky v. Richardson-Merrell, Inc., supra,* 839.

Each case to which this court has been referred by defendant which specifically considers the one bite/first comer approach to punitive damages, in the end, rejects that approach. *deHaas v. Empire Petroleum Co., supra,* rejects the first comer theory based on the language quoted above from *Roginsky. Globus v. Law Research Service, supra,* first finds the position espoused by defendant here unacceptable then goes on to note:

"Even if such a principle were valid we would have some doubt about the propriety of providing a windfall to the first litigant to chance upon a sympathetic jury." 418 F2d at 1285-1286.

This court cannot endorse a system of awarding punitive damages which threatens to reduce civil justice to a race to the courthouse steps.

Defendant has been unable to refer us to any jurisdiction, nor have we found any independently, which has considered and adopted the one bite/first comer approach to punitive damages. This is, no doubt, due in part to the availability of other alternatives to deal with the potentially onerous effects of multiple awards of punitive damages. Among those alternatives are class actions, remittitur, total elimination of punitive damages in mass

litigation and jury consideration of prior and potential punitive awards in each case.

■ In this case plaintiffs' attempt to bring a class action, faced with active opposition from defendants below, was rebuffed. Plaintiffs' attempt to consolidate their causes for trial was successfully opposed by defendants. Remittitur, in consequence of Oregon Constitution Art VII, § 3, is not available in this state. *Van Lom v. Schneiderman,* 187 Or 89, 110-113, 210 P2d 461 (1949).

Elimination of all punitive damages in mass litigation has been espoused on the premise that multiple compensatory awards serve as sufficient deterrent to obviate the need for exemplary awards. *See e.g.,* Owen, *Punitive Damages in Products Liability Litigation,* 74 Mich L Rev Part 2, 1258, 1323 (1976), for a critical discussion of this alternative. The elimination of all punitive damages in mass litigation overlooks the utility of punitive damages as an incentive to prosecute claims.

> "[E]xemplary damages operate as an inducement to bring actions that would not otherwise be pursued. Many minor offenses go unprosecuted and therefore are not deterred. Every practicing lawyer is familiar with the small-time wrongdoer who says, quite accurately, 'you can't afford to sue me.' The opportunity to obtain exemplary damages in such situations may often deter antisocial conduct that would otherwise go unchecked, and this deterrent effect outweighs any incidental windfall to the plaintiff." Hodel, *The Doctrine of Exemplary Damages in Oregon,* 44 Or L Rev 175, 182 (1965).

While this court is aware of potential difficulties in multiple litigation, the desirability of inducing citizens to act as private attorneys general applies to the facts of this case.

Additionally, it is far from certain that compensatory awards alone serve a serious deterrent function even in mass litigation.

> "* * * *This is most apt to be true when a defective product typically causes relatively slight injuries, because of the small number of such cases taken to lawyers in the first place and because few of these can be economically pursued for compensatory damages alone.* Even in situations where the injuries are usually serious, many potential claims against the [defendant] are settled for a fraction of

their value, and many are never made at all. These are the 'forgotten plaintiffs' who are left without redress under a system that only permits compensatory damages. These are precisely the plaintiffs helped by punitive damages awards, for such awards make litigation of minor claims economical and, as the number of substantial recoveries are increasingly publicized, they help to inform both injured consumers of their rights and lawyers of the desirability of litigating such claims. * * *." 74 Mich L Rev at 1323-1324. (emphasis added)

Total elimination of punitive damages in these cases is too strong a cure for the much feared, but as yet unrealized, problem of "overkill" in mass litigation.

The remaining alternative for dealing with multiple punitive awards is to commit the issue of damages to the sound discretion of a fully informed trier of fact. In determining the amount of punitive damages,

"It seems appropriate to take into consideration both the punitive damages that have been awarded in prior suits and those that may be granted in the future, with greater weight being given to prior awards." Restatement (Second) of Torts, § 908, comment e (1979).

This position is in accord with Oregon statutes in a separate context. The legislature of this state, in the area of products liability actions, has recently enacted legislation which adopts, in spirit, the Restatement view.[4] ORS 30.925(3)(g) provides:

"(3) Punitive damages, if any, shall be determined and awarded based upon the following criteria:

"* * * * *

"(g) *The total deterrent effect of other punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, punitive damages awards to persons in situations similar to the claimant's* and the severity of criminal penalties to which the defendant has been or may be subjected. [1979 ch 866 § 3]" (emphasis added)

ORS 30.925 does not apply to this action, nor does any party suggest that it does. Nonetheless, such a legislative manifestation of public policy in an area so closely related to this

---

[4] As originally proposed, SB 422 would have provided for total elimination of punitive damages in civil actions. This provision was deleted and the present ORS 30.925 (3)(g) inserted before enactment into law.

case is properly entitled to consideration in determining the state of the law in Oregon on this issue.

■ ■    One question left open by the legislature in the products liability context, and critical to this case, is who, judge or jury, will evaluate the relevant criteria and determine when the deterrent effect is sufficient to reduce punitive damages in a subsequent case. Calculating punitive damages is the function of the finder of fact. *Van Lom v. Schneiderman,* 187 Or 89, 108, 210 P2d 461 (1949). This is not to say that the jury must award punitive damages in every case where malicious or wanton conduct is proven. The jury may refrain from giving any punitive damages even though all of the elements of malicious misconduct may have been established. *Van Lom v. Schneiderman, supra* at 108; *accord,* Prosser, Law of Torts (4th Ed 1971), Dobbs, Remedies 204, § 3.9 (1973), Restatement (Second) of Torts, § 908 (1979).

While opinions of the Court of Appeals are not binding on this court, a well-reasoned decision in *Cooper v. Moscillo,* 39 Or App 443, 529 P2d 1034 (1979), involved a situation where defendant presented evidence of prior criminal punishment in connection with a claim for punitive damages in a subsequent civil action. Citing this court's decision in *Roshak v. Leathers,* 277 Or 207, 560 P2d 275 (1977), the Court of Appeals found that allowing the finder of fact to consider evidence of prior punishment was proper.

"Probably the most reasonable plan for the adjustment of the two remedies is that of permitting the defendant, when pursued in either form of punitive action, to prove that he has in fact already been punished by the other method so that present punishment may be avoided or reduced, according as the previous penalty be deemed fully adequate or not * * *." *Cooper v. Moscillo,* 39 Or App 443, 446 (1979), quoting McCormick, Damages § 82 (1935).

Like ORS 30.925, *Cooper* does not apply to this action. However, the reasoning expressed in ORS 30.925, *Cooper,* the 1979 Restatement (Second) of Torts, McCormick on Damages and recent scholarly dissertations on the subject are not without impact.

■    Defendant suggests that the jury in the *Joachim* case heard a full account of the misconduct and therefore

its punitive award should be determinative of the total punitive assessment for all 76 cases. This assertion, however, begs the question of who, judge or jury, is to determine whether a prior punitive award is determinative of similar awards in subsequent cases. We hold that it is not for the court to determine on an ad hoc, case-by-case basis whether prior exemplary damages are sufficient to cut off the potential for such awards in the future. The question of damages is an issue of fact for the trier of fact.

*Van Lom v. Schneiderman, supra,* addressed this issue in the context of a civil action for punitive damages where the defendant had already been criminally punished. In determining whether a judge could take the issue of punitive damages from the jury where the defendant had already been once punished criminally, this court said,

> "[W]hile considerations of this kind serve perhaps to emphasize to some extent the anomalous character of exemplary damages, they are irrelevant to the question before us. They do not alter the essential nature of the jury's task. Under a system such as ours, where the court responds to the law and the jury to the facts, it would be difficult indeed to say that a question which for centuries has been submitted to the decision of a jury is other than a question of fact." 187 Or at 111.

■ Under the present state of the law, because punitive damages are to be determined by the trier of fact, the court may neither reexamine nor withhold from the jury such an issue unless there is no evidence to support a finding of malicious or wanton conduct.[5] The role of the judge in actions for punitive damages is clearly set out in *Van Lom.*

> "In the trial of a case where exemplary damages are sought *the judge determines as a matter of law whether there is evidence of malice,* and, if he decides that there is, *the assessment of such damages is committed to the discretion of the jury.*" 187 Or at 108. (emphasis added)

■ Nor does the sharing agreement entered into by plaintiffs dictate adoption of the one bite/first comer theory. The issue in determining punitive damages is not who will share what with whom, but the sufficiency of the

---

[5] We need not now decide what restrictions the legislature may place on the recovery of punitive damages by plaintiffs in multiple litigation situations.

deterrent effect of punitive damages on the defendant. *Roshak v. Leathers,* 277 Or 207, 560 P2d 275 (1977); *Noe v. Kaiser Foundation Hospitals,* 248 Or 420, 435 P2d 306 (1967). The finder of fact must determine what punitive damages, if any, to award based on the proper premise of deterring future similar misconduct by the defendant or others. To this end, a number of factors may be relevant, including the seriousness of the hazard to the public, the attitude and conduct of the wrongdoer upon learning of the hazard, the number and position of employees involved in causing or covering up the misconduct, the duration of the misconduct and/or its cover-up, the financial condition of the wrongdoer, and prior and potential punishment from similarly situated plaintiffs or other sources.

This court appreciates the theoretically onerous effect of multiple punitive damages on a defendant. However, like every other court that has considered it, we reject the one bite/first comer solution as an inappropriate remedy. Other alternatives remain available to mitigate the potential effect of multiple punitive damages. The Restatement view and that in ORS 30.925(3)(g) provide for jury consideration of the effect of multiple punitive damages; class actions, in appropriate cases, provide for unitary consideration of such damages. Still other creative and applicable approaches, as yet unsurmised by legal commentators, may be devised by the attorneys and judges of this state, but, for the purpose of decision in the case at bar, we need nothing further than to hold that the one bite/first comer theory is not an appropriate solution.

For the foregoing reasons a peremptory writ of mandamus shall issue commanding the defendant to vacate his order allowing defendants' motion for a summary judgment on the issue of punitive damages.

**TANZER, J.,** concurring.

I concur entirely with the majority opinion, but I write separately to clarify my understanding of it.

It is critical to this opinion that the plaintiffs made every reasonable effort to obtain an overall adjudication of punitive damages and that defendant successfully resisted those efforts. We should not be understood as deciding that

multiple plaintiffs are necessarily entitled to successive, individual adjudications of punitive damages in situations where they do not attempt to avail themselves of some form of combined litigation or where the defendant does not resist it. As I understand it, no opinion is expressed in that regard.