## In re FEDERAL SKYWALK CASES.

No. 81–0945–A–CV–W–5.

United States District Court,
W.D. Missouri, W.D.

Sept. 17, 1982.

Irving Younger, Williams & Connolly, Washington, D.C., Robert Gordon, Anderson, Granger, Nagels, Lastelic & Gordon, Kansas City, Mo., Robert L. Collins, Collins & Steinburg, Houston, Tex., for plaintiffs representing class.

Robert Driscoll, Stinson, Mag & Fizzell, Joseph Sherman, Jackson & Sherman, Michael E. Waldeck, Niewald, Risjord & Waldeck, Kansas City, Mo., for defendants' liaison committee.

Patrick McLarney, Shook, Hardy & Bacon, Max Foust, Morris & Foust, Kansas City, Mo., John Shamberg, Schneider, Shamberg & May, Shawnee Mission, Kan., for plaintiffs-intervenors.

## ORDER AND MEMORANDUM

SCOTT O. WRIGHT, District Judge.

This action concerns the claims that have arisen out of the collapse of two skywalks at the Hyatt Regency Hotel in Kansas City, Missouri on July 17, 1981. On January 25, 1982, this Court certified a mandatory class action under Rule 23(b)(1) for the prosecution of three common issues arising from those claims. *See, In re Federal Skywalk Cases,* 93 F.R.D. 415 (W.D.Mo.1982). Those issues included liability for compensatory damages, liability for punitive damages, and amount of punitive damages. The mandatory class action was certified in order to protect the many victims of the Skywalk disaster from the spectre of insufficient funds to pay their damages,[1] to protect the defendants from the burden and expense of litigating a multiplicity of suits,[2]

1. The amount of damages claimed by those victims of the skywalk collapse who have filed suit exceeds 1.5 billion dollars. Though the actual value of those claims is probably less than the amount pled, the actual value clearly exceeds the ability of most defendants to pay. In fact, several defendants have stated in their responses to interrogatories that their net worth is minimal or negative, and insurance carriers contend that their policies with the defendants do not provide coverage for punishable acts. Since it could not be known which defendants, if any, would be held liable for the disaster, it became apparent to the Court that the monies available to pay legitimate claims might be limited.

The Court's concern with respect to the ability of defendants to pay compensatory damages was put at ease when it was informed that approximately 150 million dollars had been committed to the settlement of those claims. No money was committed to pay punitive damage claims. In addition, the defendants contended that even if their acts were punishable, only one award of punitive damages was warranted. The Court observed that Missouri law was unclear on the multiple punitive damage award issue. If Missouri law provided for only a single award, then one punitive damage

claimant would receive the whole award and would not be required to share it with other claimants. If Missouri law provides for multiple awards, then only the first few award winners could be assured of an award since the fund might be exhausted, the Court might put a limit on total amount recoverable, or each award might be remitted by the amount of previous awards. Under either circumstance, punitive damage claimants would not be treated fairly unless a mandatory class was used. The Court certified the mandatory class in order to provide an equitable result for all claimants.

2. Approximately 150 suits had been filed in the Circuit Court of Jackson County, Missouri and in this Court. The majority of cases were filed in state court. Approximately 1,000 persons who were business invitees present in the hotel lobby at the time of the skywalks' collapse have not yet filed suit.

Several cases previously filed in this Court were voluntarily dismissed and refiled in state court soon after the appellate court decertified the mandatory class. Those persons who have continued to prosecute their claims in this Court have indicated that they intend to go to

to guarantee an equitable distribution of punitive damage monies, if any, to all victims without regard to whether a particular victim was first to file and try his or her lawsuit,[3] to insulate those attorneys who represented more than one victim, or representative of a victim, from an actual conflict of interest under Disciplinary Rule 5–105 of the Missouri Code of Professional Conduct,[4] and to provide for an efficient and principled procedural vehicle for the speedy resolution of these cases. *See generally,* Comment, "The Use of Class Actions for Mass Accident Litigation," 23 Loyola L.Rev. 383 (1977); Note, "Mass Accident Class Actions," 60 Cal.L.Rev. 1615 (1972). The individual amount of compensatory damages recoverable by each class member was not to be determined by the class action.

On February 8, 1982, class members Melanie and Gerald Johnson filed a petition for a writ of mandamus in the Court of Appeals for the Eighth Circuit requesting the class action to be set aside and the disqualification of this Court.[5] Class member Jacqueline Rau then filed an interlocutory appeal and, in the alternative, a petition for a writ of mandamus. She requested similar relief. The appellate court rendered its decision on June 7, 1982, holding, two-to-one,[6] that the class certification order constituted an injunction appealable as of right under 28 U.S.C. § 1292(a)(1) and was barred by the Anti-Injunction Statute, 28 U.S.C. § 2283. *See In re Federal Skywalk Cases,* 680 F.2d 1175 (8th Cir.1982). The majority ruled that the Anti-Injunction Act bars any mandatory class action where it is certified after a class member has filed an individual suit in state court. *Id.* at 1180. Though the majority did not question the need for a class action to address the vexing issues facing this Court in this litigation, it vacated the certification order without commenting on alternative means of resolving those vexing issues. *Id.* at 1184 n. 14. The dissent, on the other hand, suggested that this Court either slightly modify its mandatory Class action order or certify an opt-out

trial. Additionally, many cases are pending in state court. Though the parties to the state court action have asserted on many occasions that the parties have agreed to a single trial, no state court order has ever been entered requiring a single trial and no written agreement *exists* among the parties in state court providing for a single trial. Nor has any order been entered in state court which would prevent those victims who have not yet filed suit from later filing suit and trying their cases. The state court plaintiffs' assertion that there will be only one or very few trials in state court is wholly without support. Even though the defendants vigorously contend that there can only be one award of punitive damages, they have opposed every attempt by this Court to bring that contention to fruition. *See, State ex rel. Young v. Crookham,* 290 Or. 61, 618 P.2d 1268 (1980) (Tanzer, J., concurring).

3. The mandatory class action was certified in order to guarantee that each victim would receive an equitable share of a single punitive damage award if the award was warranted. A victim's share could have been distributed in relation to the amount received for compensatory damage claims. *See e.g., State ex rel. Young v. Crockham,* 290 Or. 61, 618 P.2d 1268, 1269 n. 2 (1980). If multiple trials were conducted, each victim who was not the first to try his or her case might be faced with a culpable defendant whose assets were depleted or with the remittitur of the award based on prior awards.

4. Disciplinary Rule 5–105 provides, in part, that an attorney must decline or discontinue the representation of multiple clients if the exercise of his independent professional judgment on behalf of the first client who has retained him could be adversely affected by the representation of another client. An attorney places himself in a conflicting position when he undertakes the representation of multiple clients who each have punitive damage claims which have arisen out of a common incident against a common defendant or defendants. The conflict arises because only one of an attorney's clients can be assured that his or her punitive damage award will not be undermined by an award won by another client.

5. The panel unanimously agreed that there was no basis for disqualification. After the mandate of the appellate court became final, the plaintiffs-intervenors and the Hyatt Corporation again moved for disqualification based on many of the same reasons raised before. That motion was denied. In a recent memorandum filed by the Hyatt Corporation, on the issue of the propriety of a Rule 23(b)(3) class action, the Corporation again appears to be asking the Court to disqualify itself. *See,* note 8 *infra.*

6. Judge Heaney dissented.

Class action under Rule 23(b)(3). *Id.* at 1184 (Heaney, J., dissenting). By an equally divided vote, three-to-three,[7] the appellate court denied petitions for rehearing and rehearing *en banc.* The class unsuccessfully petitioned Justice Blackmun for recall and stay of the Eighth Circuit's mandate pending an application for a writ of certiorari to the Supreme Court. A petition for writ of certiorari is pending. *See, Stover v. Johnson,* No. 82–217 (August 6, 1982).

After the mandate of the appellate court became final, a motion to certify a new mandatory class action was filed. The motion proposed that this Court, in order to be consistent with the majority holding of the appellate court, recertify the issues certified in January and then exclude from membership in the Class those victims who had filed suit in state court. Oral arguments were heard on that motion in August. During the arguments this Court voiced some reservation about recertifying a mandatory class action which permitted some victims, but not all victims, to circumvent membership. Though the narrow language of the appellate court decision seemingly sanctions a mandatory class which excludes from class membership those victims who have filed cases in state court, an order fashioning a new mandatory class in accordance with the directives of the appellate court majority would be unprincipled. This Court cannot, in good conscience, certify a mandatory class action where the membership of class is governed by the fortuitous circumstance of having rushed to a courthouse to file suit.

The Court, still faced with the same concerns which were not resolved by the appellate court opinion, issued a show cause order directing interested parties to brief the issue of whether or not a voluntary class action under Rule 23(b)(3) would be proper in light of the unfolding circumstances of this case.[8] The Court additionally ordered discovery to be completed by November, 1982, and set the trial of the skywalk collapse for January 10, 1983. After the show cause order issued, a motion was filed requesting the Court to certify a Rule 23(b)(3) class action. A hearing was held on September 13, 1982 to determine the propriety of a voluntary class action. From the arguments presented at that hearing, it became apparent that no person, whose citizenship was wholly diverse from all defendants, was willing to represent the Class.[9] The Court was informed that the prior representative, Mrs. Shirley Stover and her children, had settled their cases for a reported sum in excess of 10 million dollars just prior to the hearing. Discovery is presently being conducted for the purpose of ascertaining the propriety of the alleged settlement figure.

The Court is not now inclined to certify any class action where all defendants cannot be joined and where few victims have come forward in support of one. The Court will, therefore, consolidate the cases pending before it. They will be tried beginning on January 10, 1983. Though the defendants have opposed this Court's attempts to accommodate their contention that they can only be liable, if at all, for one punitive award, this Court, nonetheless, is inclined to find that only one punitive damage recovery,[10] reflecting the totality of any punisha-

7. Chief Judge Lay, Judge Heaney and Judge Bright voted to grant rehearing *en banc.* Judge John R. Gibson did not participate in the consideration of the petition.

8. In its memorandum of August 23, 1982, in response to the show cause order, defendant Hyatt Corporation added a conclusory diatribe which was concerned generally with the "overloaded and overworked" federal court system and which inquired about why this Court would want to undertake a burden which it could easily ignore. To the extent that the Hyatt Corporation is asking this Court to leave those plaintiffs who have chosen a federal fo-

rum without a meaningful remedy or to cease handling diversity cases, no response is necessary. To the extent that its conclusion is a veiled motion to disqualify, the motion is denied.

9. Approximately 54 wrongful death claims have not been filed or settled. The position of these claimants with respect to an opt-out class is not known.

10. This includes any award for aggravating circumstances if a wrongful death claim is present.

ble conduct, will be permitted at a consolidated trial. That award could be divided among the consolidated plaintiffs.

The plaintiffs, who have filed in state court, have vigorously insisted that Missouri law permits undiminished multiple punitive damage awards. They may continue to press that contention in state court since the state court will be in a position to ultimately resolve the issue. After the state court has resolved the question, the state court's ruling would serve to guide this Court in any federal court cases which might be subsequently filed. If a plaintiff who has filed in state court and who has complete diversity with respect to the defendants is not assured that Missouri law provides for undiminished multiple punitive damage awards, that plaintiff may come forward and move for an opt-out class action as envisioned by the dissent of Judge Heaney or ask to have his or her case consolidated with cases in this Court.

Accordingly, it is hereby

ORDERED that the plaintiff's motions to certify a modified Rule 23(b)(1) or a Rule 23(b)(3) class action are denied. It is further

ORDERED that the federal skywalk cases are consolidated for discovery and trial. It is further

ORDERED that consolidated discovery be completed by November 15, 1982. It is further

ORDERED that all parties submit their proposed voir dire questions and jury instructions, exhibit and witness lists, and briefs on controverted matters by December 10, 1982. It is further

ORDERED that the consolidated trial will commence on January 10, 1983.