No. 57,184

LeRoy McDermott, *Appellee*, v. Kansas Public Service Company, *Appellant*.

(712 P.2d 1199)

Opinion filed January 17, 1986.

*Justice B. King*, of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause, and *Olin Petefish*, of Petefish, Curran & Immel, of Lawrence, and *Glenn McCann*, of Knipmeyer, McCann, Fish & Smith, of Kansas City, Missouri, were with him on the brief for appellant.

*Pedro Luis Irigonegaray*, of Irigonegaray, Eye & Florez, of Topeka, argued the cause and was on the brief for appellee.

*Thomas L. Theis* and *Jeffrey W. Jones*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, were on the brief for *amicus curiae* Kansas Association of Defense Counsel.

The opinion of the court was delivered by

Miller, J.: This is an appeal by defendant, Kansas Public

Service Company, from a judgment entered against it and in favor of the plaintiff, LeRoy McDermott, following a jury trial in Douglas County. This is a companion case to *Kearney v. Kansas Public Service Co.*, 233 Kan. 492, 665 P.2d 757 (1983). This case was consolidated with the *Kearney* case for the purpose of that appeal.

On December 15, 1977, McDermott was the lessee of a third-floor apartment in a building commonly known as 747 Massachusetts Street, Lawrence, Kansas. Shortly after midnight on that date, defendant's two-inch plastic gas main under the alley behind the building pulled out of a compression coupling which joined it to a steel gas main. Natural gas escaped through the separation and flowed into the building where plaintiff leased his apartment. Within an hour after the separation the accumulated gas exploded, and the building, including plaintiff's apartment, was damaged by the explosion and the resulting fire. For further factual background as to the cause of the catastrophe, we refer to Justice Holmes' opinion in *Kearney*.

There are two principal issues on this appeal. First, defendant contends that the trial court erred in submitting the issue of punitive damages to the jury when that issue was previously submitted to and determined by a jury in *Kearney*, and second, defendant claims that the trial court erred in finding that collateral estoppel barred the defendant from relitigating the issue of liability, and consequently that the court erred in refusing to submit that issue to the jury.

The *Kearney* jury, in addition to awarding compensatory damages, returned a verdict in favor of the plaintiffs in that case, Edgar Dale Kearney and Helen C. Kearney, for $80,000 in punitive damages. The issue was submitted under the usual instruction:

"If you find that the conduct of the defendant Kansas Public Service Company was wanton, then in addition to the actual damages to which you find plaintiff entitled, you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant Kansas Public Service Company and to deter others from like conduct."

In the present case the issue was submitted to the jury under the following instruction:

"If you find that the conduct of the defendant was wanton, then in addition to the actual damages to which you find the plaintiff is entitled, you may award

plaintiff an additional amount as punitive damages in such sum as you feel will serve to punish the defendant and to deter others from like conduct.

"An act performed or omission made with a realization of the imminence of danger and a reckless disregard or complete indifference to the probable consequences of the act or omission is a 'wanton' act.

"These damages may not exceed $200,000.00, this being the amount of plaintiff's claim."

The jury returned a verdict in favor of the plaintiff, LeRoy McDermott, for the loss of academic materials and other personal property in the amount of $100,348, and for punitive damages in the amount of $100,000.

Kansas Public Service (hereafter KPS) calls our attention to three factors in support of its first argument. It first points out the nature and purpose of punitive damages. We agree that punitive damages, by definition, are not a right of every plaintiff, but are awarded in certain cases to punish the defendant and not to compensate the plaintiff. In *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, Syl ¶ 17, 681 P.2d 1038, *cert. denied* 105 S.Ct. 365 (1984), we stated the principle as follows:

"Punitive damages are allowed not because of any special merit in the injured party's case, but are imposed to punish the wrongdoer for malicious, vindictive or willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs."

See also *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-67, 69 L.Ed.2d 616, 101 S.Ct. 2748 (1981), where the United States Supreme Court said:

"Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct. See Restatement (Second) of Torts § 908 (1979); W. Prosser, Law of Torts 9-10 (4th ed 1971)."

KPS also points to the fact, noted above, that punitive damages have already been assessed against it, and finally, KPS contends that it is being punished for the same act for which it was punished in *Kearney*. Both cases arose due to damages caused by the same explosion and resulting fire, the result of defendant's failure to properly connect a plastic pipe to a steel gas main.

Defendant and *amicus curiae* both cite a number of cases that discuss a concern over multiple punitive damage awards. One of the first cases to reflect this concern was *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832 (2d Cir. 1967). That was a products liability action for personal injuries resulting from the

use of a drug manufactured by the defendant. Both compensatory and punitive damages were claimed. More than 1500 such lawsuits were filed. The *Roginsky* court was concerned that an award of punitive damages in a large number of those cases would be staggering. The *Roginsky* court disallowed the award of punitive damages, however, not because of the multiplicity of punitive claims but because the evidence presented on trial was not sufficient to allow the issue to go to the jury. In a later Oregon case, *State ex rel. Young v. Crookham,* 290 Or. 61, 618 P.2d 1268 (1980), the court discussed *Roginsky* and said:

"Hindsight demonstrates that the apprehension of the *Roginsky* court was heavily exaggerated. Of the 1,500 cases, in only 3 did juries award punitive damages. The vast majority of cases were settled and the financial destruction feared by the Second Circuit did not come to pass." 290 Or. at 66.

In *State ex rel. Young v. Crookham,* the Oregon Supreme Court faced the issue of whether Oregon should adopt the "one bite" or "first comer" theory, so that the award of punitive damages to the first plaintiff would preclude the recovery of punitive damages for all subsequent plaintiffs. In a lucid and well-reasoned opinion, Oregon rejected the "one bite" theory, concluding that such a rule would threaten to reduce civil justice to a race to the courthouse steps, would provide a windfall to the first plaintiff, and would not be fair. The court points out possible alternatives such as class actions, remittitur, total elimination of punitive damages in mass litigation, and jury consideration of earlier and possible future punitive awards in each case. We have found no case holding that a plaintiff is prohibited from recovering punitive damages from a defendant merely because a previous plaintiff has recovered punitive damages from the same defendant based on the same conduct. Our Court of Appeals faced the same issue in *U.S.D. No. 490 v. Celotex Corp.,* 6 Kan. App. 2d 346, 629 P.2d 196, *rev. denied* 230 Kan. 819 (1981). In that case, Celotex argued that a mass-marketer should not be subject to a multiplicity of punitive damage awards when the alleged misconduct does not give rise to damages different in kind and degree from those suffered by all other users affected by the product. The Court of Appeals stated:

"While *Roginsky* certainly provides some support for Celotex's position, it is by no means dispositive of the issue. Alternative solutions exist that allow punitive damages to be awarded in a products liability situation without running into the problems that were anticipated in *Roginsky.* See Owen, *Punitive*

*Damages in Products Liability Litigation,* 74 Mich. L. Rev. 1258 (1976). Restatement (Second) of Torts § 908(*e*) (1979) states in relevant part:

"'Another factor that may affect the amount of punitive damages is the existence of multiple claims by numerous persons affected by the wrongdoer's conduct. It seems appropriate to take into consideration both the punitive damages that have been awarded in prior suits and those that may be granted in the future, with greater weight being given to the prior awards. In a class action involving all claims, full assessment of the punitive damages can be made.'

"In *Will v. Hughes,* 172 Kan. 45, 238 P.2d 478 (1951), the Kansas Supreme Court stated that a defendant has the right to consideration of any mitigating circumstances that might operate to reduce punitive damages without wholly defeating them (Syl. ¶ 10). See *Cantrell v. R. D. Werner Co.,* 226 Kan. 681, 686, 602 P.2d 1326 (1979); *Henderson v. Hassur,* 225 Kan. 678, 694, 594 P.2d 650 (1979). As USD 490 points out in its brief, Celotex had available numerous witnesses who for the purpose of mitigating the punitive damages here might have testified about the cases going on across the country with similar claims of punitive damages. Celotex, however, for tactical reasons, chose not to present such evidence to the jury. Although a considerable number of cases are pending, so far as we know only one punitive damage award against Celotex has been reviewed and affirmed by an appellate court as of this time (*Campus Sweater and Sportswear Co. v. M. B. Kahn Constr. Co., et al.,* [4th Cir.] No. 79-1724, decided February 26, 1981 [unpublished]). Based on the record before us, we do not find error on this issue." 6 Kan. App. 2d at 355.

We share the concern of other courts that a multiplicity of suits arising out of the act, if all resulted in punitive damage awards, could bankrupt a defendant. As one court observed, the purpose of punitive damages is to sting, not to kill, a defendant. *In re No. Dist. of Cal. "Dalkon Shield" IUD Products,* 526 F. Supp. 887 (N.D. Cal. 1981), *vacated on other grounds* 693 F.2d 847 (9th Cir. 1982), *cert. denied* 459 U.S. 1171 (1983). There is, however, an important distinction between the cases discussed above and cited by KPS and *amicus curiae* and the case at hand. Here, there were thirteen cases and there is no showing that other claims are anticipated. Eleven cases have been disposed of by settlement. One has been reduced to judgment, and that judgment is final. Punitive damages were awarded in that case and in this. It would appear that no further claims for punitive damages are anticipated. While in the *Kearney* trial all of the facts of the explosion and fire may have been disclosed, the extent of the damages sustained and the personal injuries, if any, were not fully disclosed. The facts of the losses of this plaintiff were not before the *Kearney* jury. That jury simply did not have the full picture.

In cases of a common disaster such as the explosion and fire here, where all of the cases are pending in a single court, it

seems to us that justice would be best served, and judicial effort best conserved, by consolidating the cases for determination of liability, wantonness, and punitive damages. That was not done in this case; we were told on oral argument that defendant opposed consolidation in the trial court.

Defendant also presents two other arguments concerning punitive damages. It contends that a second award of punitive damages is violative of due process because of such an award's quasi-criminal nature. A similar argument was made in *Celotex*, and on that point the Court of Appeals said:

"Celotex presents the novel argument that the imposition of punitive damages against Celotex, an interstate mass-marketer, violates its constitutional guarantee of due process, its right to protection against double jeopardy, and subjects it to cruel and unusual punishment. The imposition of punitive damage awards, although penal in nature, does not approach the severity of criminal sanctions and does not demand the same safeguards as do criminal prosecutions. See Comment, *Criminal Safeguards and the Punitive Damages Defendant*, 34 Univ. Chicago L. Rev. 408 (1967)." 6 Kan. App. 2d at 355-56.

Defendant cites several cases in support of this argument, but all of those cases are concerned with the award of both punitive damages and treble damages under applicable state statutes. We find them unpersuasive. We agree with the Court of Appeals and find no due process violation.

Finally, on this point, KPS argues that the doctrine of collateral estoppel precludes a relitigation of the punitive damage issue in this case, it having been litigated and determined in *Kearney*. For reasons to be stated later in this opinion, we hold that the determination of that issue in *Kearney* is no bar to its submission in this case between different parties—McDermott and KPS as opposed to the Kearneys and KPS.

It has long been the law of this state that punitive or exemplary damages may be awarded where the cause of action is founded upon gross negligence or wantonness. *Leavenworth, L. & G. R. Co. v. Rice*, 10 Kan. *426 (1872); and see *Wiley v. Keokuk*, 6 Kan. *94 (1870); and *Malone v. Murphy*, 2 Kan. *250 (1864). After considering all of the arguments on this point, we hold that whether punitive damages may be recovered in a second action between different plaintiffs and the same defendants must be determined on a case-by-case basis; and on the basis of the facts in this case we hold that the trial court did not err in submitting the issue of punitive damages to the jury.

We turn now to the determinative issue, whether the trial court erred in finding that collateral estoppel barred KPS from litigating the issue of liability, and thus whether the court erred in refusing to submit that issue to the jury. After our opinion came down in *Kearney*, McDermott filed a motion for partial summary judgment on the issue of liability. After the matter was submitted, the trial court sustained plaintiff's motion, expressing its views in the following Memorandum of Decision:

"Plaintiff's motion for partial summary judgment on the question of liability raises the legal issue of whether the doctrine of collateral estoppel precludes the trial of the liability issue in this case. Plaintiff claims it does.

"The defendant argues that mutuality is a necessary prerequisite for use of the doctrine of collateral estoppel. Defendant cites as authority *Williams vs. Evans*, 220 Kan. 394, and the *Williams* progeny for the mutuality argument in negligence cases, and *Wells vs. Davis*, 226 Kan. 586 as authority in non-negligence cases. The Court has no quarrel with the mutuality requirement or defendant's citations, however, those cases involving negligence were not decided by comparative fault law, and both plaintiff and defendant have failed to cite the case that is directly on point and resolves the issue.

"The instant case was consolidated on appeal with *Kearney vs. Kansas Public Service Company*, 233 Kan. 492 (opinion filed June 10, 1983) in which KPS raised the same issue, i.e., the requirement that mutuality of parties was necessary to invoke the collateral estoppel doctrine and that mutuality of parties does not exist because there are different plaintiffs in the cases consolidated for appeal. Ibid, 511. The response to that argument then, as now, is there is no assertion that plaintiff was at fault in any way and the only issue of liability for trial is the degree of fault of the three codefendants. The interests of the three codefendants in *Kearney* were adverse and the degree of their respective fault was determined in that case. As stated by the Court in *Kearney*, at p. 511:

"*Thus mutuality of parties does exist on the issue of the respective liability of KPS, du Pont and Dresser as among themselves. That liability has been finally determined in the Kearney case and is binding upon KPS, du Pont and Dresser in all other litigation growing out of the same occurrence.*

"That succinct statement of Justice Holmes determines the issue. The plaintiff's motion for partial summary judgment is granted. Liability is not an issue for trial in this case—it having been determined that KPS was 100 percent at fault." (Emphasis in original.)

When this case was tried, the court instructed the jury, over defendant's objection, that it would not be required to find liability or fault on the part of the defendant "as liability of the defendant has been determined in a previous case for the December 15, 1977, explosion and fire." The trial court instructed the jury that its instructions on duties of the defendant were being given solely for the purpose of permitting the jury to determine whether the conduct of KPS was wanton.

A discussion of this issue requires an inquiry as to the procedural background of the *Kearney* appeal. The Kearneys brought action against KPS, du Pont and Dresser Industries, claiming negligence on the part of each of the three defendants. The jury brought in a verdict in which it determined that 100% of the causal negligence was chargeable to KPS, and none was chargeable to du Pont and Dresser Industries. Du Pont and Dresser then filed motions for summary judgment in the remaining pending cases, including this one, and the trial court sustained those motions. KPS took separate appeals from the trial court's ruling on those motions, as well as the judgment rendered in *Kearney*, and all of the appeals were consolidated in this court and determined in *Kearney*. It is important to note that *McDermott did not appeal* the trial court's ruling granting du Pont and Dresser Industries summary judgment; none of the plaintiffs in the related cases complained of the trial court's ruling absolving those two defendants from liability. The only appeal from those rulings was taken by KPS. In the opinion, we said:

"The fact that there were no cross-claims or adversarial pleadings on file among the defendants in *Kearney* does not preclude the application of the doctrine of collateral estoppel *where the codefendants were actual adverse parties.* [Emphasis supplied.]
. . . .
"KPS next asserts that the requirement of mutuality of parties does not exist because there are different plaintiffs in the ten cases. *In none of the cases was there any assertion that any of the plaintiffs were at fault in any way and the only issue of liability for trial was the degree of fault of the three codefendants. Thus mutuality of parties does exist on the issue of the respective liability of KPS, du Pont and Dresser as among themselves.* That liability has been finally determined in the *Kearney* case and is binding upon KPS, du Pont and Dresser in all other litigation growing out of the same occurrence. [Emphasis in original.]
. . . .
"In the trial of the *Kearney* case all defendants fully litigated the issues of their respective liability and that case has now been finally determined. *Under the facts of these cases where there were no claims by any defendants in any of the cases that any of the plaintiffs were negligent or at fault and the only issues thereon were among the three codefendants, there existed mutuality and identity of the parties sufficient to invoke collateral estoppel in the later cases.* We are not called upon and do not here decide whether mutuality of estoppel is still a valid requirement for the application of the doctrine of collateral estoppel in other cases. [Emphasis in original.]
"*The record in Kearney clearly shows that KPS, du Pont and Dresser had a full, fair and complete opportunity to litigate the issue of negligence and that in fact that issue was fully and fairly litigated.* There is no need to do it again. The

trial court did not commit error in granting summary judgment in the ten consolidated cases in favor of du Pont and Dresser on the basis of collateral estoppel based upon the decision in *Kearney*, where there were no issues of possible liability by any of the plaintiffs or any other parties other than the three codefendants. Under the factual situation which existed in *Kearney* and the ten consolidated cases, the factors to invoke collateral estoppel are present. We make no determination of the applicability of the doctrine of collateral estoppel when other parties, such as the various plaintiffs in the present cases, are alleged to have been negligent." (Emphasis supplied.) 233 Kan. at 511-13.

Throughout that portion of the *Kearney* opinion quoted above, we emphasized that mutuality of parties does exist as among KPS, du Pont and Dresser Industries, and that those defendants had a full, fair and complete opportunity to litigate the issue of negligence as among themselves. The plaintiffs in the various actions arising out of the explosion *did not appeal* from the trial court's decision absolving du Pont and Dresser from liability in the companion cases. The only objection came by KPS—and KPS had had a "full, fair and complete" opportunity to litigate the issue. Insofar as the non-objecting plaintiffs were concerned, the order of the trial court entering summary judgment on behalf of du Pont and Dresser became the law of the case. McDermott makes no objection here as to that order. In *Kearney*, however, we did not go so far as to determine the issue here raised— whether the jury's verdict fixing the liability on KPS in *Kearney* makes that issue res judicata in the actions brought by other plaintiffs.

McDermott, of course, was not a party to *Kearney* when that case was tried. In the present case, the plaintiff's use of collateral estoppel was offensive. It precluded the defendant, in this case, from asserting a defense which the defendant had unsuccessfully asserted in *Kearney*. In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 4, 58 L.Ed.2d 552, 99 S. Ct. 645 (1979), the court said:

"[O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant."

The offensive use of collateral estoppel was before this court in the case of *Adamson v. Hill*, 202 Kan. 482, 449 P.2d 536 (1969). Plaintiff, riding as a passenger in an automobile driven by her husband, was involved in a collision with a vehicle driven by the defendant, Hill. Both Mr. and Mrs. Adamson brought suit for

personal injuries. The husband's suit was tried first, and eventually resulted in a judgment in his favor. Mrs. Adamson then filed a motion for partial summary judgment, alleging that defendant's negligence and her husband's contributory negligence had already been determined adversely to the defendant in the prior trial, and that the matter was res judicata and not subject to relitigation. The trial court sustained her motion. We reversed. In the unanimous opinion, Justice O'Connor discussed cases from other states, both those renouncing the mutuality requirement and those adhering to it. He said in part:

"Thus, the question posed is whether or not a judgment for a plaintiff in an earlier action is *res judicata*, or conclusive, as to the issues of negligence and contributory negligence of the respective drivers in a subsequent action growing out of the same accident by a different plaintiff against the same defendant.

"Defendant seeks to support his position by relying on the general rule that a plea of *res judicata* may be asserted only by a person who was a party or in privity with a party to the prior action. This in turn is based upon the doctrine of mutuality of estoppel; that is, a litigant can invoke the conclusive effect of the prior judgment only if he would have been bound by it had it gone the other way. [Citations omitted.] More simply stated, the requirement of mutuality means that unless both parties are bound by the prior judgment, neither may use it against the other in a subsequent action. [Citation omitted.]

"The Restatement expresses the mutuality requirement in language to the effect that a person who is not a party or privy to a party to an action in which a valid judgment other than a judgment *in rem* is rendered is not bound by or entitled to claim the benefits of an adjudication upon any matter decided in the action. (Restatement of Judgments § 93.)

. . . .

"The majority of courts throughout the country recognize and apply the doctrine of mutuality, subject to certain exceptions not germane to the factual situation here. [Citations omitted.] . . .

"The plaintiff here seeks to uphold the lower court's ruling on the basis of the so-called *Bernhard* doctrine enunciated in *Bernhard v. Bank of America*, 19 Cal. 2d 807, 122 P.2d 892, in which the court, in effect, renounced the traditional concept of mutuality of estoppel and confined the requirement of privity to the party *against whom* the plea of *res judicata* is asserted. The import of the decision is that where there is identity of issues between two suits, a party against whom judgment has been rendered in one suit is bound thereby in the other suit, even though his adversary who invokes the prior adjudication was not a party or privy to the suit in which the judgment was rendered, and would not have been bound had the judgment gone the other way. In the opinion, Justice Traynor stated:

" 'The criteria for determining *who may assert* a plea of res judicata differ fundamentally from the criteria for determining *against whom* a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the

earlier litigation in which the matter was decided. . . . There is no compelling reason, however, for requiring that the party *asserting* the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

. . . .

" 'In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party *against whom* the plea is asserted a party or in privity with a party to the prior adjudication? .. .' (pp. 811-813.) (Emphasis added.)

"The trial judge, in his memorandum opinion in the instant case, posed the three questions set forth in *Bernhard*, answered them affirmatively, and held the plea of *res judicata*, or more properly, collateral estoppel, could be invoked *against the defendant*.

"It is interesting to note that even under the *Bernhard* doctrine plaintiff would not have been bound by a judgment in favor of defendant in the prior action, because plaintiff, being the *party against whom* the plea was being asserted, had not had her day in court.

"We find that several other jurisdictions have voiced dissatisfaction with the requirement of mutuality and embraced the *Bernhard* doctrine. [Citations omitted.]

"In actual practice, despite the broad terms in which the *Bernhard* doctrine was expressed by Justice Traynor, it for the most part has been used *defensively* by one not a party to the first action against one who was a party to the first action and had his day in court upon the issues which the judgment decided, rather than applied affirmatively to establish negligence in favor of a nonparty to the previous litigation, such as in the instant case. [Citations omitted.] In other words, the courts are more inclined to permit use of the doctrine as a 'shield' by one not a party to the first action, but not as a 'sword.'

"The recent case of *Spettigue v. Mahoney*, 8 Ariz. App. 281, 445 P.2d 557, involved a similar factual situation as here in which the plaintiffs, who were not parties or privy to prior litigation which resulted in a judgment against the defendant, sought the benefit of the adjudication of negligence and proximate cause rendered in the first action, against the same defendant. The affirmative application of the *Bernhard* doctrine to establish negligence in favor of nonparties to previous litigation was thoroughly discussed in the court's opinion. The reasoning of the Arizona court, in rejecting plaintiffs' request to so apply the doctrine, appears sound to us. The unfairness of the doctrine when applied *offensively* is emphasized in the following language:

" '. . . If the *Bernhard* doctrine can be used offensively, then it is to a plaintiff's advantage, when there are several persons injured in a single accident, to use his superior powers to keep his claim out of the legal arena until there has been another plaintiff's judgment arising out of the same events.

. . . .

". . . We are reluctant to adopt a rule which would incline a plaintiff to maneuver to advance on the calendar another plaintiff's case with more jury-appeal rather than seek consolidation with other plaintiffs to determine liability. . . .' (pp. 287-88.)

. . . .

"In a factual situation such as is presented here we find no compelling reason to depart from our prior law. We have long followed the rule that an issue is *res judicata* only when there is a concurrence of four conditions, namely, (1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of the persons for or against whom the claim is made. [Citations omitted.] Inherent in the above rule is the requirement of mutuality discussed earlier in the opinion. With respect to persons in whose favor or against whom the doctrine of *res judicata* is applicable, a former adjudication is binding only on parties in the proceedings in which it is rendered, and their privies. [Citations omitted.] The doctrine does not operate to affect strangers to the judgment, that is, those who, like the plaintiff, were neither a party nor privy to a party in the litigation. Thus, a stranger is not precluded from maintaining an action, although the issues therein were determined in a prior judgment in favor of the same defendant. [Citation omitted.] Neither can the stranger claim the benefit of such judgment had it gone the other way." 202 Kan. at 484-88.

We followed the mutuality requirement of *Adamson* in *Keith v. Schiefen-Stockham Insurance Agency, Inc.*, 209 Kan. 537, Syl. ¶ 7, 498 P.2d 265 (1972); and see *Kumberg v. Kumberg*, 232 Kan. 692, Syl. ¶ 6, 659 P.2d 823 (1983); *In re Estate of Reed*, 233 Kan. 531, Syl. ¶ 1, 664 P.2d 824, *cert. denied* 464 U.S. 978 (1983), and *In re Estate of Reed*, 236 Kan. 514, Syl. ¶ 2, 693 P.2d 1156 (1985).

Since *Adamson*, many courts have considered the so-called *Bernhard* doctrine, requiring privity or identity of parties only between the parties *against whom* collateral estoppel is sought. Of particular interest is Annot., Estoppel by Judgment—Mutuality Need, 31 A.L.R.3d 1044, and the August 1985 supplement thereto. Although the original annotation, published in 1970, boldly states that "[t]he modern trend is to discard the mutuality rule as such," (p. 1052) the annotation concedes that "the majority of courts throughout the country recognize and apply the rule requiring mutuality of estoppel, subject to certain exceptions." (p. 1059.) It would appear from the 1985 annotations that the requirement of mutuality remains the majority rule. We have found no evidence toward the abandonment of that rule.

The abandonment of the mutuality rule, it seems to us, would not be fair. If Kearney and ten other plaintiffs had brought suit against KPS, based on the same explosion and fire, and had lost, plaintiff McDermott would not be precluded from bringing his action since he was not a party to the other actions nor in privity with the other plaintiffs. But since Kearney was successful, all of the remaining plaintiffs would need only prove damages in order to recover, and defendants would be precluded from asserting

the defense of lack of causal negligence in all remaining cases, if the mutuality requirement is abandoned.

In refusing to abandon the mutuality rule in a case in which plaintiff sought to make offensive use of collateral estoppel, the Arizona Court of Appeals makes several observations which we think bear repeating. In *Spettigue v. Mahoney*, 8 Ariz. App. 281, 445 P.2d 557 (1968), that court said:

"The adversary system prevails in many aspects of the life of man but contest rules seldom provide that one contestant must be declared the loser to a competitor that he has never met on the field of contest.

. . . .

". . . While this court believes that our system of justice has no peer in this fallible world, nevertheless, it is unable to consider that our trial processes unerringly discover Truth. The selection of the judge and jury, the choice of counsel, the availability of witnesses, the manner of the presentation of their testimony, the dynamics of the rapport between witnesses and fact-finder, and the personalities and appearances of the parties as they impress the fact-finder in various ways, are all matters that defy scientific analysis, are affected by fortuitous circumstances and variously determine the outcome of a contest conducted in the courts of this country." 8 Ariz. App. at 286.

We did not intend, in *Kearney*, to foreclose KPS from asserting its defense of lack of negligence in this and other related cases, and we did not then and we do not now abandon the mutuality rule. We conclude that the trial court erred in sustaining plaintiff's motion for partial summary judgment, and in instructing the jury in this case that the defendant's liability had been determined in a previous case. For this reason, the judgment must be reversed.

We have carefully examined other issues raised by KPS, but in light of our disposition of this appeal, we need not determine them. The judgment is reversed, and the case is remanded for further proceedings.

PRAGER, J., dissenting: I respectfully dissent from the holding of the majority that the trial court erred in finding that collateral estoppel barred KPS from litigating again the issue of its liability and in its refusal to submit that issue to the jury. I do not disagree with the law requiring mutuality to be present for application of collateral estoppel. Rather, I disagree with the application of that requirement to the peculiar facts in this case.

McDermott was a party to the appeal in the prior case in which the issue of causal fault was determined among the three defendants, KPS, du Pont, and Dresser. The causal fault of the

three defendants is the exact issue in the present case, because defendant KPS admitted in its pretrial questionnaire there was no issue of plaintiff's fault in McDermott's case. Because the present parties are the same parties as in the prior appeal involving the same issue, in my judgment, collateral estoppel should be applied to avoid the necessity and expense of retrying the identical issue again in McDermott's case.

Justice Miller correctly stated the operative facts in the procedural background of *Kearney v. Kansas Public Service Co.*, 233 Kan. 492, 665 P.2d 757 (1983). The Kearneys brought action against KPS, du Pont and Dresser Industries, claiming negligence on the part of each of the three defendants. The jury determined that 100% of the causal negligence was chargeable to KPS, and none was chargeable to du Pont and Dresser Industries. Du Pont and Dresser then filed motions for summary judgment on the issue of liability in the remaining pending cases, *including McDermott*. The trial court sustained those motions. KPS then took *separate* appeals from the trial court's ruling on those motions, as well as the judgment rendered in *Kearney*, and all of the appeals were consolidated in this court and determined in *Kearney*. See majority opinion at 13.

The majority contends mutuality of parties does not exist between McDermott and the three codefendants. Granted, McDermott was not a party to *Kearney* when that case was tried to a jury. However, the record in *McDermott* reflects that Dresser and du Pont sought summary judgment against the claims of *plaintiff* McDermott as well as the cross-claims of KPS. The summary judgments granted to Dresser and du Pont, from which KPS appealed, directly affected the rights of plaintiff McDermott. On appeal, plaintiff McDermott had the opportunity to cross-appeal, but the fact that McDermott acquiesced in the judgment of the trial court should not preclude application of collateral estoppel as against the same parties on appeal regarding the same issue. Plaintiff McDermott is bound by the decision of this court in the prior appeal which became the law of the case on the issue of liability. Plaintiff was not a stranger to the prior judgment of this court, and, therefore, mutuality of parties existed on the issue of the liability of the three defendants, which is the same issue in the present case.

The appeals in *Kearney*, although consolidated, involved two

separate parts: (1) The appeal from the *Kearney* judgment involving, *inter alia*, the issue of error with respect to punitive damage; and (2) the separate appeals by KPS involving the granting of summary judgment to du Pont and Dresser in ten other cases, including McDermott. Thus McDermott was a party to the appeal by KPS which concerned the *issue* of liability of the named defendants.

The majority opinion emphasizes that McDermott did not appeal the decision granting summary judgment to du Pont and Dresser to support its position that there was no mutuality between McDermott and the three codefendants. I respectfully disagree.

In *Kearney* this court stated:

"KPS next asserts that the requirement of mutuality of parties does not exist because there are different plaintiffs in the ten cases. *In none of the cases was there any assertion that any of the plaintiffs were at fault in any way and the only issue of liability for trial was the degree of fault of the three codefendants. Thus mutuality of parties does exist on the issue of the respective liability of KPS, du Pont and Dresser as among themselves.* That liability has been finally determined in the *Kearney* case and is binding upon KPS, du Pont and Dresser in all other litigation growing out of the same occurrence. [Emphasis in original.]
. . . .

"In the trial of the *Kearney* case all defendants fully litigated the issues of their respective liability and that case has now been finally determined. *Under the facts of these cases where there were no claims by any defendants in any of the cases that any of the plaintiffs were negligent or at fault and the only issues thereon were among the three codefendants, there existed mutuality and identity of the parties sufficient to invoke collateral estoppel in the later cases.* We are not called upon and do not here decide whether mutuality of estoppel is still a valid requirement for the application of the doctrine of collateral estoppel in other cases. [Emphasis in original.]

"*The record in Kearney clearly shows that KPS, du Pont and Dresser had a full, fair and complete opportunity to litigate the issue of negligence and that in fact that issue was fully and fairly litigated.* There is no need to do it again. The trial court did not commit error in granting summary judgment in the ten consolidated cases in favor of du Pont and Dresser on the basis of collateral estoppel based upon the decision in *Kearney,* where there were no issues of possible liability by any of the plaintiffs or any other parties other than the three codefendants. Under the factual situation which existed in *Kearney* and the ten consolidated cases, the factors to invoke collateral estoppel are present. We make no determination of the applicability of the doctrine of collateral estoppel when other parties, such as the various plaintiffs in the present cases, are alleged to have been negligent." (Emphasis supplied.) 233 Kan. at 511-13.

Thus, there being identity of issues and mutuality of parties, the district court properly applied collateral estoppel to the issue of

the liability of KPS in this case. In so doing, it followed the directions of this court in *Kearney*.

Application of collateral estoppel to the issue of punitive damages involves an entirely different set of circumstances. McDermott was not a party to the issue of punitive damages in the *Kearney* appeal because that portion of the holding arose in the appeal from the *judgment in the Kearney case* and was unrelated to the appeal involving the summary judgments entered in the *McDermott* case. On the issue of punitive damages, the majority correctly held there was no mutuality of parties and, hence, no collateral estoppel.

HERD and LOCKETT, JJ., join in the foregoing dissent.