No. 62,462

KENNETH M. WALTRIP, *et al.*, *Plaintiffs*, v. SIDWELL OIL AND GAS, INC., and ROBERT KLABZUBA, *Cross-claim Plaintiffs/Appellants* and *Cross-claim Defendants/Appellees*; DAVID D. READ, JR., *Cross-claim Plaintiff/Appellant* and *Cross-claim Defendant/Appellant*; and BILLIE J. READ, ALAN DANIEL READ, KATHY JANE READ, and CAROL DUBORG READ, *Cross-claim Defendants/Appellees*.

(774 P.2d 948)

Opinion filed May 26, 1989.

*Major W. Park, Jr.*, of Gage & Tucker, of Kansas City, Missouri, argued the cause, and *Joy L. Irving*, of the same firm, and *B. G. Larson*, of Williams, Larson, Strobel, Estes and Malone, P.A., of Dodge City, were with him on the briefs for Cross-claim Plaintiffs/Appellants and Cross-claim Defendants/Appellees Sidwell Oil & Gas, Inc., and Robert Klabzuba.

*Jack E. Dalton*, of Mangan, Dalton, Trenkle, Rebein & Doll, Chartered, of Dodge City, argued the cause and was on the brief for Cross-claim Plaintiff/Appellant and Cross-claim Defendant/Appellant David D. Read, Jr.

*David L. Patton*, of Patton & Kerbs, of Dodge City, argued the cause, and *Debra J. Wilson*, of the same firm, was with him on the brief for Cross-claim Defendant/Appellee Carol Duborg Read.

No appearance by cross-claim Defendants/Appellees Billie J. Read, Alan Daniel Read, and Kathy Jane Read.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by three of the original defendants in two consolidated lawsuits from orders of the district court, which granted a partial summary judgment to the original plain-

tiffs in the lawsuits, and which granted judgment on various cross-claims alleged and lodged by the defendants among themselves. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

This litigation arose out of an oil and gas venture started in 1971. The subject matter underlying this case has been before this court on two prior occasions in *First Nat'l Bank & Trust Co. v. Sidwell Corp.*, 234 Kan. 867, 678 P.2d 118 (1984), and *Waltrip v. Sidwell Corp.*, 234 Kan. 1059, 678 P.2d 128 (1984). The First National Bank case will be referred to throughout this opinion as *Sidwell I*. The Waltrip case involved the same case now before the court and was limited to a determination of whether plaintiffs' claims were barred by the statute of limitations. That action was determined favorably for the plaintiffs and is not determinative of any of the issues now before the court.

The background and underlying facts of the original oil and gas venture are fully set forth in *Sidwell I*. However, as the facts are unusually complex, we deem it advisable to set forth the entire scenario in some detail.

The original cast of characters in the oil and gas venture included Wayne Woolsey, a petroleum geologist; David D. Read, Jr., a landman in the oil and gas business; Robert Klabzuba, a petroleum geologist; and E. R. Sidwell, an oil operator and the principal owner of Sidwell Oil and Gas, Inc., and The Sidwell Corporation. We will refer to Woolsey, Read, and Klabzuba by their last names, and Sidwell Oil and Gas, Inc., as Sidwell. Read, Klabzuba, and Sidwell are the principal defendants in this action.

In 1971, Woolsey acquired a 960-acre block of oil and gas leases in Comanche County known as the Mule Creek Northeast Prospect. Woolsey approached Read about developing the leases. On October 1, 1971, a written agreement (hereinafter referred to as the Woolsey-Read agreement) was executed between Woolsey and Read for development of the oil and gas leases. Under the agreement, Read was to drill a test well for oil and gas and otherwise develop the leases, in exchange for which Read received all but a ¼th of the ⅞ths working interest retained by Woolsey. The Woolsey-Read agreement also covered additional surrounding acreage upon which Woolsey had not acquired leases. This acreage, together with the original 960 acres,

was referred to in the Woolsey-Read agreement as the "area of mutual interest" (AMI), and covered approximately 3200 acres described as all of Sections 7, 8, 17, and 18 and the south one-half of Sections 5 and 6, in Township 31 South, Range 17 West of the Sixth P.M., Comanche County, Kansas. A detailed map of the AMI may be found in *Sidwell I,* 234 Kan. at 869.

Woolsey acquired the original leases in the Mule Creek Northeast Prospect in a joint venture with T. Winston Eason and his wife. Woolsey, his wife Joan, and the successors to Mr. and Mrs. Eason were the plaintiffs in *Sidwell I* and will be referred to collectively as the Woolsey plaintiffs or *Sidwell I* plaintiffs throughout this opinion.

The Woolsey-Read agreement included the following provision relating to possible expansion of the block of leases within the AMI:

"At the date of this agreement we contemplate the acquisition of additional oil and gas leases on acreage that is contiguous to this block and in the area of mutual interest as described in Exhibit 'A'; *and if I [Woolsey] acquire any oil and gas leases on any of such lands in this area, then you [Read] shall have the option of paying all of the bonus consideration for such leases, plus the necessary broker's commission, and receiving an assignment of an undivided ¾ths interest in such lease or leases. If you [Read] acquire any leases on any of such lands you shall assign to me [Woolsey] an undivided ¼th interest in such leases free and clear of cost to me.*" (Emphasis added).

Following execution of the agreement, Read set about locating investors so that the required initial well could be drilled. On October 5, 1971, Read entered into an agreement (hereinafter referred to as the Read-Hill agreement) with several parties who desired to purchase undivided interests in the Woolsey-Read agreement. On November 23, 1971, in accordance with the October 5 agreement, Read sold and assigned undivided fractional working interests in the Mule Creek Northeast Prospect leases and the Woolsey-Read agreement to several investors, including George P. Hill, Emma E. Hill, Virginia Glenn Hill Lattimore, and James Robert Hill. He also assigned interests to Klabzuba and Sidwell and retained an interest for himself.

On October 5, 1971, Woolsey and Read acquired an oil and gas lease from Ivan S. Booth on 37 acres adjoining the Mule Creek Northeast Prospect and within the AMI designated in the Woolsey-Read agreement. The Booth lease expired at the end of its five-year primary term on October 5, 1976. On April 29, 1977,

Sidwell acquired an oil and gas lease on the Booth acreage on behalf of Sidwell, Read, and Klabzuba in equal shares. None of the other participants in the Woolsey-Read agreement or the Read-Hill agreement were informed of this acquisition, and Read did not assign Woolsey a ¼th interest in the April 1977 Booth lease as contemplated by the Woolsey-Read agreement.

On July 5, 1977, Sidwell, Read, and Klabzuba each acquired a working interest in approximately 600 acres known as the Nielsen property, also located within the AMI. At that time there was one producing well on the Nielsen property, and two others were subsequently developed. None of the other participants in the Mule Creek Northeast Prospect were informed of the acquisition, and a ¼th interest therein was not assigned to Woolsey.

After Woolsey learned of the acquisition by Read, Klabzuba, and Sidwell of their interests in the Booth and Nielsen leases, the Woolsey plaintiffs filed *Sidwell I* in the Sedgwick County District Court. The defendants in that case were The Sidwell Corporation, Read, Klabzuba, and Sidwell. *Sidwell I* ended with a judgment in favor of the Woolsey plaintiffs. The trial court found that Sidwell, Klabzuba, and Read had breached a fiduciary duty to the Woolsey plaintiffs under the original Woolsey-Read agreement, and imposed a constructive trust on defendants' interests in the Booth and Nielsen leases. This court affirmed that decision in *Sidwell I.* In doing so, this court relied heavily on the defendants' obligation under the Woolsey-Read agreement to assign Woolsey, without cost, a ¼th interest in any leases acquired by Read within the AMI. The court also noted that, under the agreement, the Woolsey plaintiffs' obligations to defendants regarding acquisitions in the AMI were not as great as the defendants' "mandatory duty to disclose to Woolsey any leases they acquired in the area *and* affirmatively assign him a 25% interest without cost." 234 Kan. at 877. Following this court's decision, Sidwell, Klabzuba, and Read settled with the Woolsey plaintiffs by paying a money settlement and assigning them an interest in the Booth and Nielsen leases. Read participated to the extent of one-third of the settlement.

In early May 1982, the cases consolidated in the instant suit were filed in Comanche County District Court. The successors to George P. Hill filed suit in an action entitled *Kenneth M. Waltrip, et al. v. The Sidwell Corporation, et al.,* and the suc-

cessors to Emma E. Hill, along with Virginia Glenn Hill Lattimore and James Robert Hill, filed a separate suit entitled *James Robert Hill, et al. v. The Sidwell Corporation, et al.* Those two lawsuits were consolidated in the Comanche County District Court and will be considered here as one case. Virginia Glenn Hill Lattimore, James Robert Hill, and the successors in interest to George P. Hill and Emma E. Hill will be collectively referred to as the Hills, the Hill plaintiffs, or simply plaintiffs.

The Hill plaintiffs obtained interests in the Mule Creek Northeast Prospect from *David Read's* assignment of fractional shares of *his* interest in the Woolsey-Read agreement and the Mule Creek Northeast Prospect leases. The Hill plaintiffs asserted claims that are similar to those asserted by the Woolsey plaintiffs in *Sidwell I.* However, the Hill plaintiffs named as additional parties defendant Judith Ann Klabzuba Park, Janet Marie Klabzuba Stevens, Jane Alice Klabzuba Korman, Jo J. Klabzuba, Billie J. Read, Alan Daniel Read, and Kathy Jane Read. Each of these defendants owned fractional shares of either the Nielsen or Booth leases by virtue of assignments made by Klabzuba and Read. Billie J. Read, Alan Daniel Read, and Kathy Jane Read will hereinafter be referred to simply as the Read children.

On November 8, 1984, Carol Duborg Read was added as a party defendant to the case. Carol Read had married David Read on May 31, 1977. On December 1, 1980, while *Sidwell I* was pending, the marriage was terminated by a decree of divorce entered in Texas. As a part of the property division in the divorce, Carol Read was awarded one-half of David Read's "owned interest" in the Booth and Nielsen leases. David Read executed an assignment of the leases to give effect to the divorce decree on December 17, 1982, after the decree had been affirmed on appeal in Texas.

Following the trial court's issuance of its pretrial order in the instant case, the plaintiffs filed a consolidated motion for partial summary judgment against defendants Sidwell, Klabzuba, and Read, contending in part that these three defendants were collaterally estopped from relitigating the issues decided in *Sidwell I.* The trial court granted the motion in a journal entry filed June 12, 1986. The court did not set out the controlling facts as required by K.S.A. 60-252(a) and Supreme Court Rule 165, 1988

Kan. Ct. R. Annot. 102. Instead, the court simply set forth the doctrine of collateral estoppel, and then held:

"4. Since Sidwell No. II [the instant case] is a mirror of Sidwell No. I, all of the defenses asserted by the defendant have been previously considered and found to be without merit, hence the defendants are collaterally estopped from reasserting the same contentions in Sidwell No. II.

"5. Plaintiffs are entitled to a partial summary judgment against David D. Read, Jr., E.R. Sidwell and Robert Klabzuba determining that they are jointly and severally liable to plaintiffs and that plaintiffs are entitled to the imposition of a constructive trust upon the Read, Klabzuba and Sidwell interests in the Booth and Nielsen leases."

On July 28, 1986, the trial court approved a settlement agreement between the plaintiffs and defendants Sidwell and Klabzuba. The settling defendants agreed to pay the plaintiffs a total of $1,050,000. They also agreed to assign to the plaintiffs an 8% overriding royalty interest in the Booth lease and a 2% overriding royalty interest in the Nielsen leases. In exchange, the plaintiffs agreed that their claims against *all* defendants had been settled by Sidwell and Klabzuba, and they assigned to the settling defendants their claims against the remaining defendants. The trial court's order approving the settlement dismissed the plaintiffs' claims against Sidwell and Klabzuba with prejudice, reserving, however, all claims among defendants.

Shortly thereafter, Sidwell and Klabzuba filed cross-claims against Read, the Read children, and Carol Duborg Read, seeking contribution for one-third of the money settlement and one-third of the fractional overriding royalty interests assigned to the plaintiffs as a part of the settlement agreement. Read and Carol Read separately answered the cross-claims, generally denying any liability. Read affirmatively alleged that the case should proceed to trial for the purpose of establishing the respective responsibilities of the parties, contending many issues remained to be resolved with regard to the contribution issue, including whether there had ever been any basis for liability to the plaintiffs.

At the same time, Read also filed a motion for summary judgment against Carol Read, asserting that her interests in the Booth and Nielsen leases were subject to the constructive trust imposed by the trial court's previous partial summary judgment order in favor of the plaintiffs. In response, Carol Read argued that her interests in the mineral leases were not encumbered by

the constructive trust. She also contended that if she were determined liable to Klabzuba and Sidwell, she would be entitled to indemnity from Read. Read's motion for summary judgment against Carol Read was denied.

On May 18, 1987, and continuing on May 26, 1987, the case went to trial on Sidwell and Klabzuba's cross-claims for contribution from Read, the Read children, and Carol Read, and on Read's cross-claim against Carol Read.

On August 24, 1987, the court filed its journal entry. The court incorporated by reference the facts of *Sidwell I*, and made additional findings of fact, many of which have been included above. In its findings of fact, the court found that the Woolsey plaintiffs in *Sidwell I* "occupied a far different relationship as a partner in the area of mutual interest as opposed to" the plaintiffs in this action. The court then made the following conclusions of law:

"1. The interest of Carol Duborg Read or David D. Read, Jr.'s children is free and clear of any claim by David that they share in his contribution.

"2. David must contribute due to being jointly and severally liable with his co-adventurers (K.S.A. 60-2413). Sidwell and Klabzuba insist that he must participate and contribute with a one-third share in their self-initiated settlement. No authority has been provided to persuade this Court that this position is sound. In the instance of joint and several liability, the amount of contribution must be determined by the Court as a matter of fact utilizing the 'principles of equity.'

"3. The doctrine or concept of comparative fault is of no help to this Court in determining the amount of David's contribution. However, the Court must consider several factors, among which are the following:

(1) The settlement relieved David of all liability to the plaintiffs;

(2) The settlement was without his consent and he had no chance to assert his contentions;

(3) The plaintiffs in Sidwell No. I and Sidwell No. II were in different relationships to Read, Sidwell and Klabzuba; and

(4) The actual basis for the settlement was a complicated formulized calculation which could well have been sufficiently clear to Sidwell and Klabzuba as a statement of their potential liability but falls short of proving their right to a one-third contribution from David. The amount of contribution must be proven with reasonable certainty.

"4. The loss incurred by all three co-adventurers must be apportioned in a fair and just manner considering the above factors as well as the conclusions and result of Sidwell No. I. This decision is only concerned with the total dollar amount of contribution; thus this judgment does not take into consideration the imposition of constructive trusts. No one now will be able to state with any certainty what total damages this Court would have allowed Waltrip and Hill. It could have been more or it could have been less.

"5. Thus David's remaining interest in the Booth and Nielsen leases are not

subject to any claim of contribution. The Court, after considering all of the above and foregoing factors and applying 'principles of equity' establishes David's contribution at $200,000.00."

The court then entered the following orders:

"IT IS, THEREFORE, BY THE COURT ORDERED, ADJUDGED AND DECREED that cross-claimants E. R. Sidwell and Robert Klabzuba are given judgment against David D. Read, Jr. in the amount of $200,000.00.

"IT IS FURTHER BY THE COURT ORDERED, ADJUDGED AND DECREED that David D. Read, Jr.'s claim for contribution from Carol Duborg Read is hereby denied.

"IT IS FURTHER BY THE COURT ORDERD, ADJUDGED AND DECREED that cross-claimants' claim for contribution from the Read children and Carol Duborg Read is hereby denied."

It should be noted that the trial court apparently granted judgment to E. R. Sidwell, who was never named as a party. Likewise, E. R. Sidwell was found to be jointly and severally liable in the order of partial summary judgment along with Klabzuba and Read. Their liability was based upon the theory of collateral estoppel. None of the parties have questioned this discrepancy involving E. R. Sidwell, a non-party, and apparently the judgments were intended to apply to Sidwell Oil and Gas, Inc. On remand, perhaps the record should be clarified.

Read has appealed from (1) the original May 1986 order which granted partial summary judgment to the original plaintiffs, (2) the court's determination that Carol Duborg Read was not required to contribute one-half of the $200,000 contribution judgment awarded against Read, and (3) the judgment for $200,000 granted Sidwell and Klabzuba. Sidwell and Klabzuba have appealed from (1) the August 24, 1987, judgment against Read for $200,000 contending it should have been for a full one-third of the total settlement, (2) the denial of Read's claim which sought contribution from Carol Read, and (3) the denial of their claims for contribution from the Read children and Carol Read.

Because Read challenges the entry of partial summary judgment holding defendants Sidwell, Klabzuba, and Read jointly and severally liable to the Hill plaintiffs, and since that issue is dispositive of most of this appeal, we will first turn our attention to it.

Read argues that the plaintiffs were not entitled to summary judgment in their favor. He reasons that the defendants' obligations to Woolsey under the Woolsey-Read agreement were significantly different from their obligations to the Hills under the

Read-Hill agreement, as they were merely investors in the venture. Read correctly argues that there was nothing specific in the Read-Hill agreement entitling the Hill plaintiffs to any interest in any additional leases acquired by Read within the area of mutual interest. Read contends the Hills were simply assigned fractional interests in *his* rights under the Woolsey-Read agreement. As this court noted in *Sidwell I*, Woolsey's rights under the Woolsey-Read agreement were substantially different from Read's. While Woolsey was entitled to a ¼th interest in any lease acquired by Read within the area of mutual interest, without cost to Woolsey, Read was entitled only to an *option* to purchase a ¾ths interest in any such lease acquired by Woolsey by paying the bonus consideration and broker's commission associated with the acquisition. The agreement is silent as to what rights assignees of Read might have if Read acquired leases in the AMI.

In granting summary judgment to the plaintiffs in the instant case, the district court simply concluded that this case is a "mirror of *Sidwell I*." However, by the time this case came to trial upon the various cross-claims of the defendants, the trial court apparently recognized that this case was not simply a "mirror of *Sidwell I*". To the contrary, the rights of the parties were substantially different. The court not only made a finding of fact that:

"Plaintiff Woolsey, *et al.* (Sidwell No. I), occupied a far different relationship as a partner in the area of mutual interest as opposed to Hill and Waltrip, *et al.* (Sidwell No. II), who were working interest owners,"

but also concluded as a matter of law that:

"The plaintiffs in Sidwell No. I and Sidwell No. II were in different relationships to Read, Sidwell and Klabzuba."

The use of offensive collateral estoppel by plaintiffs to preclude defendants from raising defenses previously adjudicated in a separate and distinct case is discussed at length in *McDermott v. Kansas Public Serv. Co.*, 238 Kan. 462, 712 P.2d 1199 (1986), and need not be reviewed here. It is clear, as the trial court finally recognized, that the obligations of the defendants to the Woolsey plaintiffs under the Woolsey-Read agreement in *Sidwell I* and the obligations of the defendants to the Hill plaintiffs under the Read-Hill agreement in this case are not the same. Because the legal duties owed by Sidwell, Klabzuba, and Read to the plaintiffs in the instant case were not identical to the

duties they owed Woolsey under the Woolsey-Read agreement litigated in *Sidwell I,* the doctrine of collateral estoppel should not have been applied by the lower court to bar these defendants from litigating the issue of their liability to the plaintiffs in the instant case. While Sidwell, Klabzuba, and Read may have had fiduciary obligations to the Hill plaintiffs, those duties had a different legal footing than those at issue in *Sidwell I.* The granting of the partial summary judgment was error which requires us to reverse that judgment and remand the case for further proceedings.

Instead of seeking a remand of the case for a trial on the issue of liability, Read asks this court to construe the legal documents in the record and find that the Hill plaintiffs are entitled to none of the defendants' interests in the Booth and Nielsen leases. However, there are other issues in addition to a construction of the written agreements which were asserted in this case. The plaintiffs did not base their claims solely upon their written agreements, but also on allegations of fraud, deceit, and breach of fiduciary duty, *Waltrip v. Sidwell Corp.,* 234 Kan. 1059, 1061, 678 P.2d 128 (1984). In addition, the defendants raised several defenses which have never been litigated or determined. Based upon this record and the proceedings below, we are not in a position to make a final determination of the issues based solely on the written documents in the record.

Because the issue of the liability, if any, of Sidwell, Klabzuba, and Read to the Hill plaintiffs is yet to be determined, we need not address the issues raised by Sidwell, Klabzuba, and Read as to the amount of contribution, if any, owed by Read. However, the judgment granting Sidwell and Klabzuba contribution from Read must also be reversed and remanded for further proceedings.

The only remaining issue to be determined by this court is the alleged liability of the Read children and Carol Read for contribution toward the settlement entered into by Sidwell and Klabzuba with the plaintiffs. The trial court in its journal entry filed August 24, 1987, denied Read's claim for contribution from Carol Read and the claims of Sidwell and Klabzuba for contribution from the Read children and Carol Read. While the court also failed to make specific findings and conclusions supporting this portion of its judgment, we conclude the ultimate decision

finding no liability by the Read children and Carol Read was correct.

Numerous arguments are asserted by Read in seeking contribution from Carol Read, and by Sidwell and Klabzuba in supporting Read's claim against Carol Read and in seeking contribution from the Read children and Carol Read. None of the arguments have merit.

The Read children and Carol Read obtained interests in the Booth and Nielsen leases by assignments from Read. None of them was ever involved in any contractual arrangements with the plaintiffs or Sidwell and Klabzuba. Likewise, none of them was involved in the securing and developing of leases within the AMI. Assuming that Sidwell, Klabzuba, and Read were liable to the plaintiffs for breach of contract or for various torts perpetrated upon the plaintiffs, Carol Read and the Read children were in no way involved with plaintiffs and had no liability to plaintiffs. Even if we assume that Sidwell, Klabzuba, and Read are joint tortfeasors that does not constitute a basis for extending liability to Carol Read and the Read children.

K.S.A. 60-2413 reads:

"**Contribution between joint obligors.** (a) *Generally.* Persons jointly liable to another in contract are entitled to contribution among themselves as heretofore recognized by principles of equity. Such right of contribution may be asserted in separate actions or by way of cross-claim, interpleader, or intervention under the provisions of article 2.

(b) *Judgment debtors.* A right of contribution or indemnity among judgment debtors, arising out of the payment of the judgment by one or more of them, may be enforced by execution against the property of the judgment debtor from whom contribution or indemnity is sought."

Obviously, Carol Read and the Read children were not jointly liable in contract to plaintiffs or to Sidwell, Klabzuba, and Read, and they were not joint debtors obligated to the plaintiffs. Likewise, Carol Read and the Read children were not guilty of any alleged wrongdoing or breach of fiduciary duty owed the plaintiffs. In *American States Ins. Co. v. Hartford Accident & Indemnity Co.*, 218 Kan. 563, 571, 545 P.2d 399 (1976), this court stated:

"The doctrine of equitable contribution has long been recognized by this court as a remedy available to one who is compelled to bear more than his fair share of a common burden or liability to recover from the others their ratable proportion of the amount paid by him. [Citation omitted.] It is a principle of equity applicable only where the situations of the parties are equal under a common liability or burden."

We conclude the trial court was correct in its determination that Carol Read and the Read children are not liable to Sidwell, Klabzuba, or Read on any of such defendants' claims or theories. For a discussion of liability under the statute, see *Cipra v. Seeger*, 215 Kan. 951, 529 P.2d 130 (1974), and *McKinney, Administrator v. Miller*, 204 Kan. 436, 464 P.2d 276 (1970). We see nothing to be gained by further extending this opinion with a detailed discussion of the various theories and arguments propounded by Sidwell, Klabzuba, and Read.

We hold that (1) the partial summary judgment granted plaintiffs against Sidwell, Klabzuba, and Read must be reversed; (2) the judgment granted Sidwell and Klabzuba against Read must be reversed; and (3) the judgment in favor of Carol Read and the Read children finding no liability on their part must be affirmed.

The judgment of the trial court is affirmed in part and reversed in part and the case is remanded for further proceedings.